**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCOTT BISHINS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MARINUS PHARMACEUTICALS, INC., SCOTT BRAUNSTEIN, and JOSEPH HULIHAN<br><br>Defendants. | Case No.: 2:24-cv-02430-JP<br><br>**PLAINTIFF'S OPPOSITION TO THE DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**<br><br>CLASS ACTION |

Lead Plaintiff Scott Bishins ("Plaintiff") respectfully submits this response to the Request for Judicial Notice of Defendants Marinus Pharmaceuticals, Inc., Scott Braunstein, Steven Pfanstiel, and Joseph Hulihan ("Defendants"). Dkt. No. 21.

As an initial matter, this Court should reject Defendants' submission of extraneous documents. Defendants request this Court judicially notice or incorporate by reference 24 documents. Defendants fail, however, to inform this Court that it may not accept anything in judicially noticed documents for the truth of the matter asserted. "[A] ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). As the Third Circuit has explained, "in reviewing a district court's dismissal under Rule 12(b)(6), we do not resolve factual disputes—even in cases governed by the PSLRA." *Institutional Investor Group v. Avaya, Inc.*, 564 F.3d 242, 260 n. 31 (3rd Cir. 2009). Defendants mislead the Court on the standard for considering extraneous documents because they ask the Court to accept as true statements in the documents they submit. The Court cannot accept any document Defendants submit for the truth of the matter without converting their motion to one for summary judgment and permitting discovery. Fed. R. Civ. P. 12(d). Short of converting this Motion to Dismiss, this Court must not allow Defendants to create a factual record outside of the Complaint's allegations.

Defendants do not claim that the Complaint misquotes any document or otherwise fails to contextualize allegations. On the contrary, the Complaint's allegations are complete, accurate, and set against requisite context. Thus, even though this Court may certainly review documents the Complaint incorporates and of which it can take judicial notice, that is beside the point. Defendants seek to exploit their ability to submit documents, presenting no rationale for their

1

inclusion. Just because they can does not mean this Court should permit them to burden the process with chaff.

In *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), the Ninth Circuit criticized defendants who attempt to "exploit[] [judicial notice] improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage," continuing, "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Id*. Further, "[t]his risk is especially significant in SEC fraud matters, where there is already a heightened pleading standard, and the defendants possess materials to which the plaintiffs do not yet have access." *Id*.

Defendants assert no proper purpose for which the Court should consider any of the 24 exhibits they submit, tacitly proposing that the weight of their filing somehow supports dismissal of the Complaint. Without a proper purpose for summitting their voluminous exhibits this Court should reject the exhibits to avoid the risk that any or all cumulatively impacts its evaluation of the Complaint's sufficiency.

Even if this Court accepts these exhibits—simply because acceptance, in and of itself, is not improper—as a matter of law, it must not consider any extrinsic documents for the truth of any matter contained therein. "If the court takes judicial notice, it does so in order 'to determine *what* statements [they] contained" but "*again not for the truth of the matters asserted*." *Roth v. Jennings*, 489 F.3d at 509 (emphases in original) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)); *see also Buhrke Family Revocable Trust v. U.S. Bancorp*, 2024 WL 1330047, at *23 (S.D.N.Y. Mar. 28, 2024) ("even if the Form 4 filings are integral to the [complaint], the Court cannot consider the filings for the truth of the matters asserted in those

2

documents . . . [t]he Court therefore declines to consider at this stage the apparent stock acquisitions completed by the [i]ndividual [d]efendants[.]") (citing *Roth*, 489 F.3d at 509); *Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Management L.P.*, 435 F.3d 396, 401 fn. 15 (3d Cir. 2006) ([w]hether appellants read the articles or were aware of them is immaterial. They serve only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true."); *In re Egalet Corporation Securities Litigation*, 340 F.Supp.3d 479, 497 (E.D.P.A. 2018) ("[judicial notice] serves only to indicate what was in the public realm at the time, not whether the contents of those documents are true.").

Here, Defendants impermissibly prompt this Court to consider certain exhibits for the truth of their contents. *See* Defendant's Motion to Dismiss ("DBr.") at 6-7 (citing Exhibit E at 5 to argue for the truth that Defendants had "also told investors, repeatedly, that if the drug did not hit the early stopping criteria, Marinus would presume there was some flaw in the assumptions and that the Company was likely to pull the plug"); DBr.7 (citing Exhibit I, at 4 and Exhibit O, at 3, arguing for the truth that Defendants had repeatedly told investors that if the drug did not hit the early stopping criteria, Marinus would "pull the plug").

The statements made at certain conferences  by Defendant Braunstein demonstrate why extraneous documents cannot be considered for their truth, and only for the fact that they were made. As Defendant Braunstein stated in June 2023, as documented in Ex. E at 5, "I would say *we haven't made a final decision, but I think more likely than not*, we'd probably stop enrolling[.]" DBr.7. Defendants' Exhibit I contains a quote from Defendant Braunstein that "*our general view today* is that if this study is not stopped at an interim, we'd stop – we'd *very likely stop the study* soon after with our expectation that there was not a clinically relevant differential." *Id.* (citing Ex. I at 4).

3

As alleged in his amended complaint, by no later than November 7, 2023, and with actual knowledge of the low probability that IV ganaxolone would show statistical significance over placebo, Defendants forced an interim analysis which was almost certain to fail. *See* Dkt. No. 12, at 2. Defendants did so due to financial considerations because, despite their public representations to Marinus investors, Marinus did not have a sufficient cash runway to fund both the RAISE trial and TrustTSC, an ongoing oral ganaxolone trial, into the fourth quarter of 2024. *Id.* In fact, Defendants had been advised as early as mid-2023 *not* to conduct the interim analysis, because it had a very low probability of success. *Id.*

Accordingly, the quotes above were materially false and misleading at the time they were made because Defendant Braunstein did not state that a decision to stop the RAISE trial had been made, only that it was likely that the RAISE trial would be stopped if early stopping criteria was not met.

Defendants cite documents that don't support what they are saying. First, Defendants cite Exhibit R, an SEC Form 4, and argue that "Dr. Braunstein actually *purchased* 50,000 shares on March 27, 2024, just weeks before the stock price cratered." Mem. At 20. They further argue that "[t]his *purchase* of nearly a quarter of a million dollars in stock, recorded in publicly accessible documents, makes no sense if, as Plaintiff claims, Dr. Braunstein knew that Marinus's main drug candidate was going to fail." (Emphasis added.). *Id.* While the Court can take notice of an SEC document, the transaction that Defendants falsely represent to have been a "purchase" is designated under code "M." As the SEC has stated, General Transaction Code "P" is an "[o]pen market or private purchase of non-derivative or derivative security[.]"[1] According to the SEC, general transaction code M represents an "Exercise or conversion of derivative security exempted

---

[1] *See* https://www.sec.gov/edgar/searchedgar/ownershipformcodes.html.

pursuant to Rule 16b-3." *Id.* Rule 16b-3 refers to transactions between a securities issuer and its officers or directors, *not*, as defendants seem to argue, a routine, open market "purchase."

According to Exhibit R, Defendant Braunstein acquired Marinus common stock at a price of $4.28 on March 27, 2024. According to readily available data on MarketWatch, Marinus stock traded at a range of $8.56-$9.0799 on March 27, 2024.[2] *See* As such, by acquiring Marinus stock at half of the stock's low price on March 27, 2024, Defendant Braunstein experienced an immediate windfall. This acquisition is, therefore, wholly incomparable to an open market purchase.

Further, Defendants cite Exhibit T, an excerpted analyst report dated April 15, 2024, to argue that "Marinus's decision to stop enrollment was entirely consistent with Defendants' prior disclosures that there was a risk the interim analysis would fail and that the Company was likely to stop the trial." Mem. at 24.

Defendants cite language from the analyst report that "[o]ur understanding is the company previously suggested it would essentially stop the study if this specific scenario occurred." *Id.* The analyst report cited by Defendants was published after the first disclosure alleged in the Complaint. *See* Dkt. No. 12 at 49-50. It is telling that Defendants did not cite an analyst report from prior to April 15, 2024.

On the contrary, the Complaint cites an analyst named Joon Lee who asked, before April 15, 2024, about the stopping criteria, and raised the idea of "if you don't stop at the interim, that you can actually spill into maybe a much later time point for the full study to read out." ¶ 43. As

---

[2]https://www.marketwatch.com/investing/stock/mrns/download-data?startDate=3/25/2024&endDate=3/29/2024.

a result, it is clear that analysts were not uniformly clear that the RAISE trial would end if the early stopping criteria were not met. As such, this is a matter for the trier of fact.

If the Court considers any of Defendants' documents for the truth of their contents, rather than to provide context or to correct an error in the Complaint, Rule 12(d) requires the Court to convert the motion to dismiss to a motion for summary judgment and to lift the PSLRA's discovery stay, *see* 15 U.S.C. §78u-4(b)(3)(b), permitting full discovery into Plaintiffs' claims. Fed. R. Civ. P. 12(d).

Dated: January 8, 2025                          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Jacob A. Goldberg*
Jacob A. Goldberg
Gonen Haklay
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Tel: (215) 600-2817
Fax: (212) 202-3827
Email: jgoldberg@rosenlegal.com
Email: ghaklay@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Putative Class*

**THE SCHALL LAW FIRM**
Brian Schall, Esq.
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
Fax: (213) 519-5876
Email: brian@schallfirm.com

*Additional Counsel for Plaintiff*